[No. D024368. Fourth Dist., Div. One. Jan. 16, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANKIE LLAMAS, Defendant and Appellant.

[No. D026009. Fourth Dist., Div. One. Jan. 16, 1997.]

In re FRANKIE LLAMAS on Habeas Corpus.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts B through E of the Discussion.

## Counsel

Willard F. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkens and Gary W. Brozio, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BENKE, Acting P. J.**—Appellant Frankie Llamas was found guilty of possession of a controlled substance while armed with a firearm, vehicle

taking, receiving stolen property, possession of a firearm by a felon and possession of a controlled substance. He appeals, arguing insufficient evidence of auto taking, receiving stolen property and possession of a firearm by a felon, error in the preclusion of a defense witness, in the denial of his *Marsden*[2] motion and in the response given to a jury question. He further claims prosecutorial misconduct and ineffective assistance of counsel. Appellant filed a companion petition for writ of habeas corpus, claiming ineffective assistance which we consider with the appeal.

FACTS

### A. *Prosecution Case*

In late January 1995, Irma Llamas and her husband, appellant, argued over his taking her 1994 gray Nissan. Appellant took the car without permission and Irma filed a stolen vehicle report.

In the early morning hours of February 1, 1995, Officer Michael Walden drove to Tamarindo Way in Chula Vista in response to the report of a possible auto theft in progress. At the location, Walden stopped, got out of his vehicle and approached a gray Nissan parked on the street. As he did so, he noticed appellant get out of the car, walk to the front of the vehicle, open the hood and then almost immediately close it again. The officer saw no one else next to the car.

Unaware the officer was present, appellant walked toward him. The officer announced his presence and told appellant to stop and put up his hands. Appellant put his hands in his front pockets and continued walking toward the officer. When the officer again ordered him to raise his hands, appellant removed them from his pockets and made a tossing motion with his left hand. Although the officer saw nothing being tossed, he heard the sound of metal "jangling." Appellant put his hands in the air, continued walking toward the officer and challenged the officer to shoot him. He then made a turning motion, removed a backpack and threw it at the officer's feet. As this occurred, the officer saw a second man, later identified as Greg Rhea, in the bushes next to the sidewalk near the vehicle.

Appellant was detained. A check run on the gray Nissan indicated it was the vehicle appellant's wife had reported stolen. Appellant was placed under arrest. Rhea was detained but later released.

Officer Walden searched the backpack appellant had thrown at his feet and found a plastic baggie containing a substance later determined to be

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

methamphetamine. The gray Nissan was searched, and under the hood, in the open area next to the battery, the officer found a loaded .22-caliber revolver. The gun was not in a bag.

A search was conducted in the area where appellant made the tossing motion, and keys to the gray Nissan were found in bushes nearby.

Questioned by officers after appellant's arrest, Irma stated she did not own a gun and did not know if appellant did.

## B. *Defense Case*

At trial, Irma testified the gun found in the engine compartment of the Nissan was hers and that she had placed it there in a bag about three weeks before appellant took the vehicle. She explained the gun was her mother's and she got it after her mother's death. It was her intention to give the gun to her father; but until she was able to do so, she wanted to keep it out of the house and away from her three sons. Irma admitted denying to the police any knowledge of the gun and stated she did so because she did not want to get into trouble.

Appellant testified that at the time his wife reported her car stolen, he was living with her on the weekends but was working in Las Vegas during the week. The Nissan was his wife's car, but he used it frequently. He admitted taking the vehicle on January 28, 1995. He stated he had permission to use the car but not to keep it for three days.

Appellant stated the incident resulting in his arrest occurred outside the condominium where he and his wife lived. He explained he came to the residence in the Nissan with Greg Rhea. Rhea was driving since appellant had no driver's license. It was appellant's plan to talk with his wife. Appellant left Rhea in the car and tried to awaken his wife so she would come down and talk with him. Unable to make contact with his wife, he went to the residence of a neighbor, Lorena Tweedle, where he believed he might find his wife. His wife was not there and appellant and Tweedle returned to the Nissan. Appellant awakened Rhea, who came out of the car. As the two men stood by the car, the police approached. Appellant stated it was Rhea and not he who tossed the keys into the bushes. Appellant stated he was confronted by an officer who told him to get on the ground. Appellant testified he fully cooperated, doing all the officer asked. Appellant denied throwing the backpack at the officer's feet and stated it was on the hood of the car when the officer approached. He stated he had never seen the gun before, he denied raising the hood of the car and stated he had merely

banged on it to awaken Rhea. Appellant stated the backpack, while containing some of his property, was not his and he did not know it contained methamphetamine.

## DISCUSSION

### A. *Sufficiency of Evidence*

Appellant argues the evidence was insufficient to convict him of auto taking, receiving stolen property or possession of a firearm.

In determining whether evidence is sufficient to support a verdict, we examine the entire record, viewing the evidence in the light most favorable to the judgment and presuming in support of the verdict the existence of every fact the jury could reasonably deduce from the evidence. The issue is whether the record so viewed discloses evidence that is reasonable, credible and of solid value such that a rational trier of fact could find the elements of the crime beyond a reasonable doubt. (*People* v. *Brown* (1995) 35 Cal.App.4th 1585, 1598 [42 Cal.Rptr.2d 155].)

### 1. *Auto Taking*

Appellant makes several arguments related to the sufficiency of the evidence of auto taking. An auto taking within the meaning of Vehicle Code section 10851, subdivision (a), occurs when a person "drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without the intent to steal the vehicle."

### a. *Consent and Intent*

Appellant argues the evidence was insufficient to prove a lack of consent or an intent to permanently or temporarily deprive the owner of possession of the car.

Appellant's wife testified that in late January 1994, she owned the vehicle that appellant, her husband of three years, was charged with taking. She testified they argued and she did not want him to take the car; and when he took it, she filed a stolen vehicle report.

Irma testified she reported the car stolen because she had placed a gun under the vehicle's hood three weeks prior to its taking and was afraid if

appellant opened the hood he would discover the weapon. Irma also stated appellant used the car from time to time to drive to his job in Las Vegas.

Appellant testified that while the Nissan belonged to his wife, he used it frequently. He admitted that on or about January 28, 1995, he took the car. Appellant stated that while he knew the car belonged to his wife, he had permission to drive it but not to keep it for three days.

Appellant suggests Irma, by her testimony that she reported the car stolen because it contained the gun, was recanting the claim appellant had taken the vehicle without permission. First, Irma's reason for reporting the crime has no necessary relationship to whether there was a crime. In our view, Irma never retreated from the position the car was taken without her permission. She merely claimed she decided to report the crime because of her concern about the gun. Second, Irma had before trial reported her car stolen and stated she believed her husband took it. Even if Irma recanted that claim at trial the jury was free to reject her trial testimony and accept the initial claim.

Likewise, there was sufficient evidence to support the conclusion appellant intended to either temporarily or permanently deprive his wife of possession of her car. Irma testified they argued about whether he could take the car. Appellant took it. At trial appellant admitted taking the car and keeping it for three days. When confronted by the police, he threw the keys to the car into the bushes. The jury could reasonably conclude appellant took the car intending to temporarily deprive Irma of possession of the vehicle. When appellant arrived back at his wife's residence, he came with a friend. Before going inside, he placed a gun under the vehicle's hood. The jury could reasonably believe appellant did not come to return the car but intended to leave with it and keep it permanently. (See *People* v. *Green* (1995) 34 Cal.App.4th 165, 180-181 [40 Cal.Rptr.2d 239].)

### b. *Community Property and Vehicle Code Section 10851*

Appellant notes there was uncontradicted evidence at trial that the vehicle taken was purchased during his marriage to the victim. Appellant, citing the presumption that property acquired during marriage is community property (Fam. Code, § 760; *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 289-290 [39 Cal.Rptr.2d 673]), argues the only possible conclusion is that the vehicle taken was his community property. Appellant notes one element of the crime of auto taking is that the vehicle taken be the property of another. He argues since the vehicle was his own, he could not be guilty of taking it and therefore, the evidence was insufficient to support his conviction.

### 1. *Theft of Community Property*

The problem of whether an owner can be criminally liable for stealing property coheld with others is not a new one. (See 2 Lafave & Scott, Substantive Criminal Law (1986) § 8.2, pp. 335-336.) ■ In California, theft occurs when a co-owner takes jointly held property with the intent to permanently deprive other owners of their interest in that property. (*Oakdale Village Group* v. *Fong* (1996) 43 Cal.App.4th 539, 545-546 [50 Cal.Rptr.2d 810]; *People* v. *Sobiek* (1973) 30 Cal.App.3d 458, 463-469 [106 Cal.Rptr. 519, 82 A.L.R.3d 804] (*Sobiek*); see also *People* v. *Kahanic* (1987) 196 Cal.App.3d 461, 463-467 [241 Cal.Rptr. 722] (*Kahanic*).)

The seminal California case is *Sobiek*. There, a partner was charged with grand theft based on the embezzlement of partnership funds. Rejecting prior authority, the court concluded the defendant could be criminally liable for embezzling such property. While relying on several bases, for example, the wording of the particular statute did not require the property embezzled be that of another, and that a partnership can be characterized as a legal entity separate from the partners, the court also importantly noted that the element of theft that the property be that of another did not require it be "wholly" that of another. ■ The court concluded the fact a partner has an undivided half-interest in partnership property is meaningless to his liability for theft since stealing that portion of the partner's share that does not belong to the thief is no different than stealing any other property. (*Sobiek, supra,* 30 Cal.App.3d at pp. 463-469.)

*Sobiek*'s reasoning was applied to community property in *Kahanic*. In *Kahanic* a wife, angry at finding the community property Mercedes Benz used by her husband parked in front of his girlfriend's apartment, threw a beer bottle through the vehicle's rear window and was charged with vandalism. Vandalism occurs when a person maliciously damages real or personal property "not his own." (Pen. Code, § 594, subd. (a).) The wife argued that since the automobile was community property, and thus hers, she could not be guilty of vandalizing it. (*Kahanic, supra,* 196 Cal.App.3d at pp. 462-463.)

■ The court, citing Civil Code section 5105 (now Fam. Code, § 751), noted that during the continuance of a marriage the interest of the spouses in their community property is "present, existing and equal." Citing *Sobiek*, however, the court concluded the requirement in criminal statutes that property be that of another or not the defendant's own "excludes criminality only when the actor-defendant is involved with property wholly his or her own." (*Kahanic, supra,* 196 Cal.App.3d at p. 466.) The court explained: "The essence of the crime is in the physical acts against the ownership

interest of another, even though that ownership is less than exclusive. [Citation.] Spousal community property interests are no longer 'mere expectancies,' as they were for a married woman many years ago. [Citation.] Each community property owner has an equal ownership interest and, although undivided, one which the criminal law protects from unilateral nonconsensual damage or destruction by the other marital partner." (*Id.* at p. 466.)[3]

We conclude a spouse may be criminally liable for the theft of community property.

## 2. *Taking of a Community Property Automobile*

The conclusion a spouse may be liable for the theft or criminal damage to a community property asset does not, however, resolve the issue in this case. The jury was instructed an auto taking within the meaning of Vehicle Code section 10851 occurs when the defendant drives or takes a vehicle not his or her own, without consent, with the intent either to permanently or temporarily deprive the owner of his or her title to or possession of the vehicle with or without the intent to steal the vehicle. It is possible, therefore, appellant was convicted based on his intent to temporarily and not permanently deprive his wife of the car. Is such an act criminal when the car is community property?

The theft of or the vandalizing of community property are acts which both exceed the defendant's rights to the property and offend the ownership and possessory interest of his or her spouse. However, when the auto taking is accompanied only by the intent to temporarily deprive, the act, while offending the spouse's possessory interest, does not exceed the taking spouse's right to the property. The vehicle is indivisible and its use by one spouse necessarily denies its use to the other. The decision to temporarily take sole possession of a community property vehicle may be based on agreement, misunderstanding or a peevish desire to deny temporarily, for whatever reason, use of the vehicle to the other. Still, in taking the vehicle, even with the intent to temporarily deprive a spouse of its use, the actor does not exceed his or her property right and the problem is properly viewed as a domestic and not a criminal one.

We conclude based on the legal analysis above, and on social policy, that when a spouse takes a community property vehicle with the intent to temporarily deprive the other spouse of its use, no violation of Vehicle Code

---

[3]There is language in *People* v. *Green* (1980) 27 Cal.3d 1, 50, footnote 37 [164 Cal.Rptr. 1, 609 P.2d 468], which seems to suggest by negative implication that a spouse cannot steal community property. The case, however, does not so hold.

section 10851 occurs since in legal effect that spouse has not taken a vehicle not his or her own. It is, therefore, not a crime for a spouse to take a community property vehicle with the intent to temporarily deprive the other spouse of his or her title to or possession of that vehicle.

It apparently occurred to no one at trial that appellant's presumptive community property interest in the car could negate any finding of guilt based on his intent to temporarily deprive his wife of that vehicle. When, however, the prosecution rested without rebutting that presumption, the evidence was insufficient to support a conviction of Vehicle Code section 10851 based on the theory appellant intended to temporarily deprive his wife of the vehicle.

### 3. *Prejudice*

The question remains whether the error was prejudicial. Vehicle Code section 10851 describes a single crime that can be committed in a variety of ways depending on the intent of the actor. Here, the prosecution's failure to rebut the presumption the vehicle taken was community property affected one of the theories on which the jury could have based its verdict of guilt but not the other. Under such circumstances the appropriate mode of prejudice review is that defined in *People* v. *Guiton* (1993) 4 Cal.4th 1116 [17 Cal.Rptr.2d 365, 847 P.2d 45] (*Guiton*).

*Guiton* teaches that if a jury is presented with multiple theories supporting conviction on a single charge and on review one theory is found unsupported by sufficient evidence, reversal is not required if sufficient evidence supports the alternate theory and there is no affirmative basis for concluding the jury relied on the factually unsupported theory because it is presumed jurors would not rely on a factually deficient theory. (4 Cal.4th at pp. 1128-1129.)

*Guiton* also instructs that if a jury is presented with multiple theories supporting conviction on a single charge and on review one theory is found legally defective, that is, the theory does not present a legally sufficient basis for conviction, reversal is required unless substantial reasons exist to find that the verdict was based on a legally valid theory. This is so since it is not presumed a jury will perceive the legal inadequacy of a theory and reject it as a basis for conviction. (*Guiton, supra,* 4 Cal.4th at pp. 1128-1129.)

In this case the jury was instructed conviction was possible either because appellant took the car intending to permanently deprive his wife of it or because he intended to temporarily deprive her of the car. Instruction on

the second theory was defective since the jury was not informed the vehicle was presumptively community property and of that presumption's affect on the requirement in Vehicle Code section 10851 that the car not be appellant's own. While that omission technically resulted in insufficient evidence to support one of the two theories of guilt, it must be treated for *Guiton* purposes as legally deficient since, in effect, the jury was misinstructed concerning an element of the offense. We cannot presume the jury would have perceived this legal defect and based its verdict solely on the remaining theory of guilt.

We find nothing in the record suggesting the jury relied on the theory appellant intended to permanently, rather than temporarily, deprive his wife of the car, and the Vehicle Code section 10851 conviction must be reversed.[4]

### 4. *Status on Remand*

■ "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." (*Burks* v. *United States* (1978) 437 U.S. 1, 11 [57 L.Ed.2d 1, 9, 98 S.Ct. 2141].) With regard to crimes like auto taking that can be based on multiple theories, the failure of the prosecution to present sufficient evidence in support of one of the theories generally forecloses retrial on that theory. (*People* v. *Young* (1987) 190 Cal.App.3d 248, 254-259 [235 Cal.Rptr. 361].)

However, under some circumstances a finding of insufficient evidence does not foreclose retrial. The usual situation is when a reviewing court determines reversal is required because evidence was erroneously admitted at trial and also concludes without that evidence there was insufficient evidence to support conviction. The situation is treated as mere "trial error" which does not invoke the double jeopardy clause. (*Lockhart* v. *Nelson* (1988) 488 U.S. 33, 38-42 [102 L.Ed.2d 265, 272-275, 109 S.Ct. 285] (*Lockhart*); *People* v. *Shirley* (1982) 31 Cal.3d 18, 71-72 [181 Cal.Rptr. 243, 723 P.2d 1354]; *People* v. *Harvey* (1984) 163 Cal.App.3d 90, 107-108 [208 Cal.Rptr. 910].)

In *Lockhart* the defendant was sentenced under an habitual offender statute that required the proof of four prior felony convictions. Later, on collateral attack, it was shown that as to one of the four convictions, the

---

[4]Appellant's conviction for receiving stolen property (count 3) was based on his alleged taking of the vehicle which was the subject of the auto taking charge. Since we have reversed appellant's conviction for auto taking, it is necessary we reverse the conviction on the receiving count as well. In light of our reversal of the auto taking charge, it is unnecessary we deal with any of the other arguments offered by appellant concerning that charge.

defendant had received a pardon. Thus, there was insufficient evidence to support habitual offender sentencing. In rejecting the defendant's claim he could not be retried on the habitual offender allegation, the court made the observation, important in the present case, that had appellant demonstrated at trial that one of his convictions had been pardoned, the prosecution would have had the opportunity to offer another prior conviction to satisfy the requirements of the statute. The high court stated a remand would merely recreate the situation that would have existed had the trial court rejected the pardoned prior. (*Lockhart, supra*, 488 U.S. at p. 42 [102 L.Ed.2d at pp. 274-275].)

Another situation, perhaps closer to the present one, where a finding of insufficient evidence did not bar retrial was in *People v. Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826] (*Garcia*). In *Carlos v. Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862] (*Carlos*), our Supreme Court concluded that an intent to kill or to aid in a killing was essential to a finding of the felony-murder special circumstance.[5] The core question in *Garcia* was whether *Carlos* was retroactive. The court determined it was and found prejudicial error in the failure to instruct concerning the required intent. (*Garcia, supra*, 36 Cal.3d at pp. 547-556.)

The defendant argued that not only did the trial court fail to properly instruct concerning the required intent, the evidence offered was insufficient to demonstrate that intent. He asserted the double jeopardy prohibition foreclosed retrial of the felony-murder special circumstance. The court rejected the claim, noting the trial in *Garcia* occurred before the decision in *Carlos* and that the insufficient evidence of intent might be the result of the prosecution's failure to realize that proof of intent was necessary. The court stated: "We agree with the defendant that the evidence presented may be insufficient to support a finding of intent to kill, but think it unrealistic to assume that the prosecution, with a perfect case for proof of felony murder, necessarily presented all available evidence relating to intent." (*Garcia, supra*, 36 Cal.3d at pp. 557-558.) The court remanded for a new trial on the special circumstance.

■ We conclude the *Lockhart/Garcia* rationales are applicable to the present case and place no restrictions on the People's right to seek a retrial of the Vehicle Code section 10851 charge. What occurred below was essentially "trial error." Until the decision in this case, there was no clear statement concerning the esoteric effects of community property law on Vehicle Code section 10851. No defense was offered related to the possible

---

[5]This broad holding in *Carlos* was overruled in *People v. Anderson* (1987) 43 Cal.3d 1104, 1138-1139 [240 Cal.Rptr. 585, 742 P.2d 1306].

community property nature of the vehicle nor was the jury instructed concerning that issue. It is certainly possible that had the prosecution realized the importance of whether the subject vehicle was appellant's community property, it could have presented evidence negating the presumption that it was. Under these circumstances should the People choose to retry appellant on the auto taking charge, they may do so on the theory he intended to either permanently or temporarily deprive his wife of the vehicle.

### 2. Possession of a Firearm

■ Appellant was convicted of possession of a firearm by a felon. He contends the evidence was insufficient to show he had dominion and control over the gun or knowledge of its presence. Appellant also argues even if the evidence was sufficient, the trial court erred in failing to instruct on the lesser offense of attempted possession of the firearm.

#### a. Sufficiency of the Evidence

In arguing the evidence was insufficient to demonstrate knowledge and dominion and control, appellant is apparently under the impression the jury was required to accept his wife's testimony the gun was hers and she placed it in the engine compartment of the car to hide it from appellant and her children. The jury was not so constrained.

The evidence allowed the conclusion that, however he came to have it, appellant was in possession of the vehicle in which the gun was found. The jury could reasonably believe that when appellant was seen momentarily opening the hood, he was doing so either to make sure the gun was still present or that he was placing the gun in that location before going to his wife's apartment. Based on its inconsistencies and incredible nature, the jury could reject appellant's wife's claim the gun was hers and she had hidden it in the car. The evidence was sufficient to convict appellant of possession of the gun.

#### b. Lesser Included Offense

■ Appellant argues since there was evidence from which the jury could find he merely attempted to possess the gun, the trial court erred in failing to instruct concerning that lesser offense. Appellant argues the jury could have accepted his wife's testimony the gun was hers and have decided that when appellant opened the hood of the car, he did so in an attempt to possess the gun, an attempt cut short by the arrival of the police.

■ A court must instruct concerning a lesser offense when the evidence is substantial enough to merit consideration by the jury. (*People* v. *Barton*

(1995) 12 Cal.4th 186, 195, fn. 4 [47 Cal.Rptr.2d 569, 906 P.2d 531].) The court need not so instruct when there is no evidence the offense is less than that charged. (*People* v. *Hawkins* (1995) 10 Cal.4th 920, 952-953 [42 Cal.Rptr.2d 636, 897 P.2d 574].)

 The officer who apprehended appellant stated appellant opened the hood of the car and closed it unaware the officer was present. Appellant testified he did not open the hood at all and agreed that he did not know the officer was present until confronted by him. We conclude the evidence supports a finding of possession and would not support a finding of mere attempted possession. The trial court was not required to instruct on the lesser included offense.

B.-E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The petition for writ of habeas corpus is denied. Appellant's convictions for auto taking (count 2) and receiving stolen property (count 3) are reversed; his convictions for possession of a controlled substance (count 5), possession of a firearm by a possessor of a controlled substance (count 1) and possession of a firearm by a felon (count 4) are affirmed and the matter is remanded to the trial court.[7]

Huffman, J., and McIntyre, J., concurred.

---

*See footnote 1, *ante*, page 1729.

[7] It is unnecessary given this disposition that we consider appellant's issue concerning sentencing.