Filed 2/27/15  P. v. Silva CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>  v.<br><br>DENNIS CHARLES SILVA,<br><br>      Defendant and Appellant. | C072100<br><br>(Super. Ct. Nos. 09F09081,<br>    12F04901) |

In case No. 09F09081, a jury convicted defendant Dennis Charles Silva of being a convicted felon in possession of a firearm (former Pen. Code, § 12021, subd. (a)(1)—count one)[1] and carrying a concealed firearm (former § 12025, subd. (a)(1)—count two). Defendant admitted a strike prior (§§ 667, subds. (b)-(i), 1170.12) and two prior prison terms (§ 667.5, subd. (b)). In case No. 12F04901, defendant entered a plea of guilty to failure to appear (§ 1320.5) and admitted an on-bail enhancement (§ 12022.1). For both

---

[1] Undesignated statutory references are to the Penal Code.

1

cases, the court sentenced defendant to state prison for an aggregate term of eight years eight months.

Defendant appeals in both cases but raises only one issue, relating to case No. 09F09081. He contends the trial court erroneously denied his motion for acquittal because the presence of the gun in the car was alone insufficient to support his convictions. We conclude sufficient evidence supports his convictions. Defendant failed to raise any issues in case No. 12F04901, so we will dismiss the appeal.

**FACTS**

About 3:00 p.m. on December 1, 2009, Deputy Sheriff David Lee saw a car speeding on Arden Way. Deputy Lee followed the car for more than two miles. He noticed that it had expired registration tags and stopped the car. Defendant was the driver and Tessa Trimble, defendant's girlfriend, was the front seat passenger. After asking for defendant's license, registration, and proof of insurance, the deputy asked defendant if he was on probation or parole. Defendant admitted he was on parole. The deputy had defendant get out of the car. The deputy then pat-searched defendant and did not find any weapons on his person. Deputy Enriquez had arrived and was at the passenger side speaking with Trimble. Trimble was also asked to get out of the car. Defendant agreed to a search of the car.

Deputy Lee searched the car, which had a lot of trash in the front and was "very messy." Deputy Lee began on the passenger side for safety reasons (the driver's side was along the road). In the middle of the floor, up against the center console on the passenger side but near the driver's side and not underneath the seat or any trash, the deputy found a grey T-shirt loosely wrapped around a semiautomatic nine-millimeter handgun, a magazine (which had been taken out of the gun) with two nine-millimeter hollow-point rounds, and three loose nine-millimeter hollow-point rounds. Although the gun had a broken handle and looked damaged, it was in working order and was capable of being fired. There was electrical tape around the magazine.

2

The deputy asked defendant about the gun. Defendant denied that the gun belonged to him. He seemed calm. He stated that he did not know to whom the gun belonged. He claimed he had never before seen the gun. He stated that a lot of people used the car and that he had lent the car to someone, but could not remember that person's name. When separately questioned, Trimble said the same thing as defendant. She did not know anything about the gun. She claimed that defendant lent the car to other people, a lot of people had used it the previous week, and a couple of people whose name she did not know had used it the previous day.

An identification technician found four latent prints on the electrical tape around the magazine. Another technician found enough ridge detail on only one of the four latent prints to make a comparison. The print did not match defendant, Trimble, or defendant's father, Dennis Silva, Sr.

Defendant testified at trial. He admitted he was on parole the day Deputy Lee stopped his car. Defendant admitted five prior felony convictions for drug and assaultive offenses. He knew he was prohibited from possessing firearms and it was a violation of his parole to be in possession of a gun. The day he was stopped, he was upset because he had lost money at bingo and sped through a green light but denied he was going as fast as the officer claimed. Defendant saw the deputy but did not worry because he had a driver's license, insurance, and valid registration (although the tag was not on the car). Defendant admitted the car belonged to him but the insurance was in his father's name, and he claimed Trimble normally drove the car. Defendant's father did not have a car. Defendant admitted that he agreed to a search of the car. Defendant claimed the deputy first searched the driver's side and then searched the passenger side. The deputy put a "rag" on top of the car and held a gun up in his hand. Defendant claimed he was "blown away," having never before seen the gun. Defendant denied that the grey T-shirt belonged to him. Defendant claimed that his father had taken the car home on Thanksgiving and had kept it until the day before defendant was pulled over. Defendant

3

did not give this information to the deputy. Instead, defendant said he had lent the car to a friend and did not know that person's name, explaining he "couldn't give up" his father. Defendant stated he had been recently paroled and moved to a sober living faith-based program, planning to change his life.

On cross-examination, defendant denied talking to Trimble about what to do if pulled over while the deputy followed for two or three miles. Defendant claimed he knew what would happen because officers search his car every time he gets pulled over. He stated that he would have "tried to run or something" if he knew a gun was in the car, and "I would never, never have been driving like that with a gun in the car. Wouldn't have happened. With no tags or nothing. It don't even make sense." Defendant assumed the gun belonged to his father because he was the "last one driving the vehicle." Defendant denied lying to the deputy, saying he just did not tell him, explaining his father was his "best friend" and that when defendant spoke to the police, "I sure don't remember [my father's] name." Defendant denied his father ever showed him the gun.

Trimble testified. She denied knowing there was a gun in the car. She claimed the car was registered to defendant's father and that she shared the car with him. Prior to the stop, defendant's father had been using the car for a few days. Trimble believed she picked up the car the day prior to the stop. Trimble initially claimed she did not remember "exactly" what she had told the deputy but subsequently confirmed she had told the deputy the gun belonged to her to protect defendant's father, not defendant, and then said it did not belong to her, telling the deputy she had never before seen the gun. When defense counsel noted that her statement taking responsibility for the gun was not in the deputy's report, Trimble claimed she did not remember saying it and maybe only thought of saying it to take responsibility instead of someone else. Trimble did not recall telling the deputy that "Dennis" let others drive the car and several had done so the previous day, but when shown her statement she "guess[ed]" that was what she had said. Trimble then stated that she was referring to defendant's father. But she told the deputy

4

that "Dennis," her boyfriend, let others drive the car. She had been in a relationship with defendant for 11 years, loved defendant, and did not want to see him get in any trouble. She admitted she would take the responsibility for defendant or his father, explaining that defendant had only three months remaining on his parole. She insisted that neither she nor defendant knew about the gun. On recross-examination, she "technically" had no idea whether defendant knew the gun was in the car, but she was "pretty sure" he did not.

Defendant's father (Dennis Silva, Sr.) testified that he used the car for three days beginning on Thanksgiving, and thereafter, while he was ill, someone picked up the car. Father recognized the gun because he claimed he bought it for $20, months before Thanksgiving, from someone he met in a doughnut shop. Father claimed he showed his girlfriend the gun when he brought it home after buying it. The gun was wrapped in the grey T-shirt. Father admitted the T-shirt "smelled pretty bad," but the smell did not permeate the car although father claimed his sense of smell was not very good. Father claimed he did not tell defendant about the gun and never showed it to him. The day after Thanksgiving, father took the gun to a gunsmith to see if it was worth fixing, but the gunsmith was not home. Father left the gun under the passenger seat of the car, which he parked in the driveway of his home. When he went to the doctor two or three days later, the car was gone, so his grandson took him. Father assumed that defendant had the car (the car was registered in defendant's name). When Trimble called and said they had been stopped and the gun was found under the seat, father realized what had happened and called defendant's attorney. Father admitted that he had not signed his statement until eight months after defendant's arrest, but he had told the story to defendant's attorney three days after defendant's arrest.

Father's girlfriend saw the gun after father bought it, which she claimed was sometime around Thanksgiving. The gun was wrapped in a T-shirt and it was on the passenger side of the car. She thought the car belonged to father since she had seen defendant drive it only once.

5

Father's barber client saw the gun after father bought it, sometime around Thanksgiving. Father claimed he was going to have the gun repaired. The client identified the gun from photographs of the gun found in the car. The gun made the client "nervous" because he was a convicted felon.

## DISCUSSION

Defendant contends the trial court erroneously denied his motion for acquittal, arguing that the prosecution failed to prove that he had knowledge of the presence of the gun in the car. The People argue the trial court properly denied the acquittal motion because the jury could decide from circumstantial evidence that defendant had the requisite knowledge. We conclude sufficient evidence supported knowledge and that the trial court properly denied the acquittal motion.

**Background**

At the conclusion of the presentation of all the evidence, defendant's motion for a judgment of acquittal (§ 1118.1) was heard.[2] Defense counsel argued insufficient evidence supported a finding that defendant knew the gun was present in the car. The prosecutor argued defendant's knowledge could be inferred from the fact that the car belonged to him, the gun was located in close proximity to the driver's side, and he was driving erratically.

The trial court denied the acquittal motion, finding that defendant was in possession of a jointly owned car, he was driving at the time, he had possession and control of the gun, and an inference could be drawn that he knew about the gun on the floorboard of the car, which he had been driving around to various locations for some

---

[2] Defense counsel reminded the court that he planned to move for acquittal after the prosecution rested but the parties had agreed to allow defendant to begin his testimony out of order. In fact, all the defense witnesses testified before the acquittal motion was heard.

6

time. Noting that he made his motion at the close of the prosecution's case but it was not heard until all the evidence had been presented, defense counsel objected to the trial court's consideration of defendant's testimony (the trial court had stated the jury could decide defendant knew despite his testimony). The trial court stated an inference could be made that defendant knew what was in his own car.

**Analysis**

"In ruling on a motion for judgment of acquittal pursuant to section 1118.1, a trial court applies the same standard an appellate court applies in reviewing the sufficiency of the evidence to support a conviction, that is, ' "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." [Citations.]' [Citation.] 'Where the section 1118.1 motion is made at the close of the prosecution's case-in-chief, the sufficiency of the evidence is tested as it stood at that point.' [Citation.]" (*People v. Cole* (2004) 33 Cal.4th 1158, 1212-1213.) "We review independently a trial court's ruling under section 1118.1 that the evidence is sufficient to support a conviction." (*Cole*, at p. 1213.)

The standard of review is not different when the prosecution relies upon circumstantial evidence. "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.] 'Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt.' [Citation.]" (*People v. Bean* (1988) 46 Cal.3d 919, 932-933 (*Bean*); accord, *People v. Jones* (2013) 57 Cal.4th 899, 960-961; see also CALCRIM No. 224.)

7

To prove the offense of being a convicted felon in possession of a firearm, the prosecutor must prove that the defendant had previously been convicted of a felony and knowingly and wrongfully possessed the firearm. (*People v. Snyder* (1982) 32 Cal.3d 590, 592; *People v. Kim* (2011) 193 Cal.App.4th 836, 846; *People v. Jeffers* (1996) 41 Cal.App.4th 917, 922; CALCRIM No. 2510.) Defendant and the prosecutor stipulated that defendant had previously been convicted of a felony. Defendant also admitted the same on the witness stand.

To prove the element of possession, the prosecution was required to show that defendant had actual or constructive possession. (*People v. Cordova* (1979) 97 Cal.App.3d 665, 670.) Possession does not need to be actual or exclusive. (*People v. Rushing* (1989) 209 Cal.App.3d 618, 622.) A showing of joint or constructive possession is sufficient. (*People v. Nieto* (1966) 247 Cal.App.2d 364, 368.) Possession and knowledge may be proved by circumstantial evidence. (*Cordova*, at pp. 669-670; see also *People v. Llamas* (1997) 51 Cal.App.4th 1729, 1743.)

To prove the offense of carrying a concealed firearm, the prosecutor was required to prove that defendant had previously been convicted of a felony and knowingly carried a firearm in a concealed or substantially concealed fashion within any car under his control. (*People v. Jurado* (1972) 25 Cal.App.3d 1027, 1030; CALCRIM No. 2521.)

Defendant only challenges the evidence to support his knowledge of the presence of the gun in the car. Defendant argues that neither his ownership of the car nor the gun's proximity constituted sufficient evidence of his knowledge of the gun's presence in the car, noting the gun was completely concealed in a T-shirt amongst trash on the passenger floorboard. He also claims he did not engage in any suspicious activity.

Here, there was evidence that defendant, a convicted felon and on parole, was driving his car with his girlfriend in the front passenger seat. He was speeding and his car did not have a current registration tag on the license plate. When stopped by a sheriff's deputy, defendant admitted he was on parole; a search of his car ensued. The

8

deputy found the gun, magazine, and bullets hidden in a T-shirt in the middle of the front floorboard next to the console on the passenger side but close to the driver's side. At the scene, both defendant and his girlfriend denied any knowledge of the gun. Defendant claimed he had lent his car to a friend but could not remember the person's name. Defendant's girlfriend said defendant lent the car to others and a couple of people had driven it the previous day but she did not know who they were. The jury could reasonably infer that defendant and his girlfriend had coordinated their stories.[3] Despite defendant's denial, the jury could infer that defendant put the gun where it was found so that it was within his immediate reach.

We agree with the trial court that there was sufficient evidence to sustain convictions for possession of a firearm and carrying a concealed firearm. The gun's location in defendant's car, in close proximity to defendant, a convicted felon, who had been driving for some time; his speeding; the coordinated stories; and his motive to lie because he was on parole are sufficient to support the inference that defendant knew the gun was present.

Defendant cites *People v. Williams* (1971) 5 Cal.3d 211, which held that mere possession of a drug does not constitute sufficient evidence of knowledge of its narcotic nature. For drug possession, the prosecution must prove the defendant had knowledge of the nature and presence of the drug; *Williams* focused on the nature, not the presence (where it found there was more than sufficient evidence), of the drug. (*Id*. at pp. 215-216.) *Williams* does not assist defendant. Defendant does not claim he did not know that the item found was a gun.

---

[3] Defendant complains that the jury could just as easily have reasonably inferred their statements were true. But that is not the appellate court's concern on appeal and not sufficient for reversal. (See *Bean*, *supra*, 46 Cal.3d at pp. 932-933.)

9

Defendant also cites other drug cases where the opportunity of access to a place where the drugs were found was insufficient alone to prove possession but that knowledge of presence can be inferred from something more than mere proximity and ownership of the locale, such as the defendant's conduct indicating a consciousness of guilt.  To the extent that "something more" is required, it is present here in the form of defendant's motive to lie and the joint effort he and his girlfriend made to mislead the officers by constructing an explanation for the gun's presence, which they both later disavowed.

As the People note, to the extent defendant's contention can be construed as a challenge to the sufficiency of the evidence to support his convictions, we conclude that there was more than sufficient evidence.  Defendant gave inconsistent and contrived stories to the deputy and at trial, demonstrating a consciousness of guilt.  Defendant was a convicted felon, on parole, and subject to search, which showed he had a motive to lie about the gun.  Sufficient evidence supported defendant's convictions.

## DISPOSITION

The judgment is affirmed in case No. 09F09081.  The appeal in case No. 12F04901 is dismissed.


                                                                    RAYE                    , P. J.



We concur:



          BLEASE          , J.



          DUARTE          , J.

10