Filed 1/28/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B261243 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA427911) |
| v. | |
| JOSE AGUILERA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael D. Abzug, Judge. Affirmed.

C. Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael R. Johnsen and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

In *People v. Llamas* (1997) 51 Cal.App.4th 1729 (*Llamas*), the court of appeal held that "a spouse may be liable for the theft [of] a community property asset" (*id.* at p. 1739), but that "when a spouse takes a community property vehicle with the intent to temporarily deprive the other spouse of its use, no violation of Vehicle Code section 10851 occurs since in legal effect that spouse has not taken a vehicle not his or her own." (*Id.* at pp. 1739-1740.) The instant case involves whether and how the dual holdings of *Llamas*, as well as principles of community property, apply to the crime of robbery.

Here, a jury convicted defendant Jose Aguilera of the second degree robbery of his wife, Angelica Avila (Pen. Code, § 211),[1] and of misdemeanor battery against her (§ 243, subd. (e)(1), a lesser included offense of the charged corporal injury to a spouse (§ 273.5, subd. (a)).[2] In the robbery, the property taken was a cell phone. The prosecution's theory, as explained in the prosecutor's argument to the jury, was that defendant temporarily took the phone to prevent his wife from calling the police while he was violently assaulting her, thus intending "to remove it from [Avila's] possession for so extended a period of time that [she] would be deprived [of] a major portion of the value or enjoyment of the" cell phone. However, testimony at trial suggested that the phone was presumptively community property.

---

[1]     Further undesignated statutory references are to the Penal Code, unless otherwise indicated.

[2]     He was sentenced to five years' formal probation, subject to serving 365 days in county jail, and ordered, among other things, to complete a year-long domestic violence program.

2

On appeal, relying on *Llamas,* defendant contends that when a robbery involves the taking of community property, the charged spouse cannot be guilty if the taking was committed with the intent only to temporarily, as opposed to permanently, deprive the other spouse of the property, because in such circumstances the charged spouse has not taken property not his or her own. On that premise, he contends that the evidence is insufficient to support his robbery conviction, because the evidence failed to prove that he intended to permanently deprive his wife of the cell phone. He also contends that the trial court erred by failing to instruct on principles of separate and community property as relevant to the requirement of robbery that a defendant take property not his or her own.

We hold that properly understood, *Llamas* compels the conclusion that one spouse can be convicted of robbing the other of community property on a temporary taking theory, that the principles of separate and community property are immaterial to a robbery prosecution, and that instructions on those principles are unwarranted.


## BACKGROUND[3]

On August 3, 2014, defendant and Avila, who had been married for about six years and had two children, attended a baptism party. Avila carried a purse, which contained a wallet with her identification and other personal documents, the

---

[3]    Testifying at trial, Avila recanted statements she made to the deputy sheriff who responded to the incident. The prosecution impeached her with the description of the incident she gave to the responding deputy. Consistent with the standard of review on appeal, our summary of the evidence relies on Avila's prior description of events, to the extent it presents the incident in the light most favorable to the judgment.

keys to the couple's car, and a white cell phone that she regularly used. Defendant carried a black cell phone.

As the party ended, defendant and Avila argued. He was upset that Avila had obtained a restraining order against him several days earlier after an incident of domestic violence. Avila ran from the party to the couple's parked car. Defendant ran after her, put his hands around her neck, and began to strangle her, demanding that she give him "the phone."

Avila got inside the car. Afraid that defendant might "do something," Avila locked the door, began rolling up the window, and turned on the ignition, preparing to drive away. Defendant broke the driver's-side window, reached inside, and turned off the engine. Avila's feet and hands were cut by shattered glass. Defendant tried to pull Avila out of the car through the window. The couple struggled over Avila's purse, but defendant overpowered Avila and took the purse from her.[4]

---

[4] As noted (see fn. 3, *ante*), Avila's trial testimony was not consistent with the above description of events. Avila testified that she and defendant argued at the party because she wanted him to stop drinking so they could go home. She said she mistakenly took "his phone" from a table and put it into her purse while he was in the bathroom. He was mad at her because, unbeknownst to her, she had taken his phone, not because of the restraining order.

Avila denied that defendant tried to strangle her. Rather, he ran after her to stop her from leaving and grabbed her by the back of her neck—although not "that hard because [she] was able to free [her]self"—and demanded "the phone." Avila believed defendant was demanding "[her] phone," which struck her as "weird."

Avila also testified that defendant's hand got stuck in the window (which was already cracked) as she closed it, and the window broke accidentally as he pulled back his hand. He never grabbed, hit or touched Avila in any harmful way while she was inside the car. She did not suffer injuries to her feet, nor any pain or redness in her neck.

4

Juan Diaz, a bystander at the scene, testified that he ran to the car after he heard a woman scream and the sound of breaking glass. He saw defendant, who was halfway inside the car through a broken driver's side window, on top of Avila. Defendant and Avila were struggling over a purse, and Diaz heard defendant yell "give me the bag and the phone." Diaz yelled at defendant to leave Avila alone; defendant ignored him. A friend helped Diaz wrest defendant from the car. After being pulled from the car, defendant took a phone out of the purse, threw the purse inside the car, and left.

Deputies found defendant a block from the party. He was leaning on a parked truck, talking on a cell phone and had Avila's phone and wallet in his pocket. The deputies returned the wallet and phone to Avila, interviewed her and took photographs. A deputy observed cuts on one of Avila's feet and an arm, and redness on her neck. Defendant had minor cuts on an arm and a hand.

The prosecution presented the following evidence of defendant's history of domestic violence with a former girlfriend and Avila, and his history of taking his wife's cell phone after such incidents to prevent her from calling the police (Evid. Code, § 1109):

(1) In August 2006, during an argument with a former girlfriend, defendant punched the woman on her leg, causing bleeding and bruising;

(2) In late February 2012, Avila called 911 to report that defendant had pushed her, hit her and grabbed her by the throat and squeezed;

(3) On October 1, 2012, Avila called 911 to report that defendant hit and kicked her, pulled her hair, and had hit her on numerous occasions in the past. Avila had run to a pay phone to call 911 because defendant "snatched" her phone so she could not call the police. Avila explained to responding officers that the

5

five-inch cut on her wrist was from a box cutter defendant used to cut her during the altercation;

(4)   On October 3, 2012, Avila told police defendant grabbed her by the throat with both hands during an argument; and

(5)   In a 911 call made July 29, 2014, about a week before the incident which gave rise to this case, Avila reported that defendant hit her and took her phone. She told police he grabbed her by the throat, choking her for several seconds, pushed and punched her, slammed her against a wall and kicked a bedroom door, breaking it off its hinges. Responding officers observed a visible red mark on Avila's neck. Avila said she had to borrow a phone to call 911 because, as was usually the case when they fought, defendant took her phone.[5]

Avila testified that the purse and cell phone she carried at the party had been Mother's Day gifts to her from defendant. The white cell phone "belongs to [her]"; the black cell phone "belongs to [defendant]." Defendant bought both the phones during the marriage and he pays the phone bill. Although she is the primary user of the purse and white phone, Avila considers that both the phone and

---

[5]   Again, Avila's testimony regarding these incidents at trial was quite different: She denied the incident in February 2012, and denied suffering any injuries or telling the police defendant grabbed her by the throat, but did acknowledge he had used one hand to push her on the chest. Avila testified that she lied to police about both incidents in October 2012, and said the cuts on her arm were self-inflicted. Avila also testified that defendant never hit or touched her on July 29, 2014. The injuries to her throat that day were self-inflicted and she blamed her children for damaging the door by closing it too hard. Avila claimed that she lied to the police about defendant's physical abuse in 2012 because she was angry that he had been unfaithful, and wanted a restraining order to get him out of the house. Avila acknowledged she had to borrow a phone to make the 911 call on July 29, "because every time [they] argue[d] [defendant] would . . . take away [her] phone."

purse (defendant sometimes carries the purse when they shop) belong "equally" to the couple. Avila has no objection to defendant using either one without her permission, and does not consider it a theft when he uses or takes her purse or phone without asking. Although the purse belongs to both of them, Avila acknowledged that she fought over it with defendant at the party "because it was [hers]."

## DISCUSSION

Relying on *Llamas, supra,* 51 Cal.App.4th 1729, defendant contends that when a one spouse is charged with robbery for taking community property from the other spouse, the charged spouse cannot be guilty if the taking was committed with the intent only to temporarily, as opposed to permanently, deprive the other spouse of the property. On that premise, he contends that the evidence is insufficient to support his robbery conviction, because the evidence failed to prove that he intended to permanently deprive his wife of the white cell phone. He also contends that the trial court erred by failing to instruct on principles of separate and community property as relevant to the requirement of robbery that a defendant take property not his own. As we explain, he is mistaken on all counts.

### A. *Prosecution's Theory of Robbery*

At trial, the prosecution's theory of robbery was that defendant took Avila's white cell phone in order to prevent her from calling the police. The prosecutor argued not that defendant took the cell phone to permanently deprive Avila of it, but rather "to remove it from the owner's [Avila's] possession for so extended a period of time that the owner would be deprived [of] a major portion of the value or enjoyment of the property; the property being the phone. What's deprived is the

7

ability to call the police on her husband who's strangling her . . . just like he did all those other times.  You can probably argue that . . . calling 911 is probably the most important call you could make; right?  . . .  He doesn't take her phone away when she's talking with her friends or parents.  He takes it away only when she's calling the police, after he's beaten her, and that's what he did once again.  Again, the robbery is not the regular robbery.  It's another version of domestic violence in this case.  It's how he continues to do what he does."

### B. *Community Property*

Although not discussed at trial, Avila's trial testimony raised the question whether the white cell phone was community property.  Avila testified that her purse and cell phone were Mother's Day gifts from defendant, and that the white cell phone "belongs to [her]," while defendant has a black cell phone that "belongs to [him]."  On the other hand, she also testified that defendant bought both the phones during the marriage and he paid the phone bill.  Although Avila was the primary user of the purse and white phone, Avila considered that both items of property belonged "equally" to her and to defendant.  Avila had no objection to defendant using either one without her permission, and did not consider it a theft when defendant used or took her purse or phone without asking.

Because under California law there is a rebuttable presumption that property acquired during a marriage is community property in which each spouse has a present and equal interest, and an equal right to management and control (see Fam. Code, §§ 760, 751, 1100, subds. (a), (c)), Avila's testimony raised the question whether the white cell phone was community property.  The presumption of community property is easily rebutted (see *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 290), and to the extent Avila testified that the cell phone was a

8

gift, such testimony might have rebutted the presumption of community property. (See Cal. Const., art. 1, § 21 ["Property . . . acquired during marriage by gift . . . is separate property"].) However, because the question whether the phone was community property was not raised below, the jury was not instructed on the presumption of community property or on rebuttal of the presumption.

Nevertheless, we need not examine those principles further because, as we explain, even if the white cell phone was community property, under the reasoning of *Llamas* defendant was properly convicted of robbery.

C. *People v. Llamas*

In *Llamas*, *supra,* 51 Cal.App.4th 1729, the defendant was convicted of violating Vehicle Code section 10851, subdivision (a) (section 10851). That section provides in relevant part: "Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle . . . is guilty of a public offense . . . ."

The evidence showed that after arguing with his wife, the defendant drove off in what both he and his wife considered to be, in the colloquial sense, the wife's car. The wife reported it stolen. Three days later, police recovered the car and arrested the husband. (*Llamas, supra*, 51 Cal.App.4th at p. 1734.) Although the spouses viewed it as the wife's car, there was evidence the vehicle was purchased during the marriage. Thus, it was presumptively community property. (*Id*. at p. 1737.) Based on that presumption, the defendant argued on appeal (although the issue was not raised in the trial court) that he could not be guilty of

9

violating section 10851, because the crime requires that the vehicle taken be the property of another, but the vehicle he took was his own.

In resolving the contention, the court reached two holdings. First, the court held that a spouse may be convicted of a theft of community property, which requires an intent to permanently deprive the other spouse of the property, because such an intent exceeds the taking spouse's rights to the property, and thus constitutes a taking of property not owned by the taking spouse. The court observed that "[i]n California, theft occurs when a co-owner takes jointly held property with the intent to permanently deprive other owners of their interest in that property." (*Llamas, supra*, 51 Cal.App.4th at p. 1738.) In determining that this principle applied to a spouse's taking of community property, the court discussed two prior decisions, *People v. Sobiek* (1973) 30 Cal.App.3d 458 (*Sobiek*) (involving theft by a co-owner of property) and *People v. Kahanic* (1987) 196 Cal.App.3d 461 (*Kahanic*) (involving one spouse's vandalism of community property).

In *Sobiek, supra,* a partner was charged with grand theft for embezzling partnership funds. As *Llamas* explained, the court in *Sobiek* found the partner criminally liable because "theft occurs when a co-owner takes jointly held property with the intent to permanently deprive other owners of their interest in that property," regardless of whether the embezzled property belongs "wholly" to another. (See *Llamas, supra*, 51 Cal.App.4th at p. 1738, citing *Sobiek, supra*, 30 Cal.App.3d at pp. 463–469.)

By analogy, the rule of *Sobiek* was extended to community property in *Kahanic, supra,* 196 Cal.App.3d 461, in which a wife threw a bottle through the window of a community property vehicle. She was convicted of vandalism (§ 594, subd. (a)), which "occurs when a person maliciously damages real or personal

10

property 'not his own.'" (*Llamas, supra,* 51 Cal.App.4th at p. 1738, quoting § 594, subd. (a).) The wife argued that because the car was hers as community property, her vandalism conviction must be vacated. (*Llamas, supra,* 51 Cal.App.4th at p. 1738.) Relying on *Sobiek,* the *Kahanic* court found that criminal statutes requiring that property belong to another, not to the defendant, "'exclude[] criminality only when the actor-defendant is involved with property wholly his or her own.'" (*Ibid.,* quoting *Kahanic.*) "'The essence of the crime is in the physical acts against the ownership interest of another, even though that ownership is less than exclusive. [Citation.] Spousal community property interests are no longer "mere expectancies," as they were for a married woman many years ago. [Citation.] Each community property owner has an equal ownership interest and, although undivided, one which the criminal law protects from unilateral nonconsensual damage or destruction by the other marital partner.'" (*Id.* at pp. 1738-1739, quoting *Kahanic.*)

Based on these decisions, the court in *Llamas* held that "a spouse may be criminally liable for the theft of community property." (*Llamas, supra*, 51 Cal.App.4th at p. 1739.) However, the court noted that this conclusion did not resolve whether a spouse could be convicted of violating section 10851 for taking a community property vehicle, because it was "possible [the husband] was convicted based on his intent to temporarily and not permanently deprive his wife of the car." (*Ibid.*) In resolving this issue, the court reached its second holding: based on community property principles and social policy, a spouse cannot be convicted of violating Vehicle Code section 10851, subdivision (a) for taking a community property vehicle, if the intent is only to temporarily deprive the other spouse of the vehicle. (*Id.* at pp. 1739-1740.)

11

The court reasoned: "The theft of or the vandalizing of community property are acts which both exceed the defendant's rights to the property and offend the ownership and possessory interest of his or her spouse. However, when the auto taking is accompanied only by the intent to temporarily deprive, the act, while offending the spouse's possessory interest, does not exceed the taking spouse's right to the property. The vehicle is indivisible and its use by one spouse necessarily denies its use to the other. The decision to temporarily take sole possession of a community property vehicle may be based on agreement, misunderstanding or a peevish desire to deny temporarily, for whatever reason, use of the vehicle to the other. Still, in taking the vehicle, even with the intent to temporarily deprive a spouse of its use, the actor does not exceed his or her property right and the problem is properly viewed as a domestic and not a criminal one." (*Llamas, supra,* 51 Cal.App.4th at p. 1739.) Thus, the court held: "We conclude based on the legal analysis above, and on social policy, that when a spouse takes a community property vehicle with the intent to temporarily deprive the other spouse of its use, no violation of Vehicle Code section 10851 occurs since in legal effect that spouse has not taken a vehicle not his or her own. It is, therefore, not a crime for a spouse to take a community property vehicle with the intent to temporarily deprive the other spouse of his or her title to or possession of that vehicle." (*Id.* at pp. 1739-1740.)

D.  *Robbery of Community Property*

Relying on the second holding of *Llamas* – that a spouse cannot be convicted of violating section 10851 for taking a community property vehicle intending only to temporarily deprive the other spouse of the vehicle – defendant contends that a spouse cannot be convicted of robbery for taking community

12

property from the other spouse, intending only to temporarily deprive the other spouse of the property. However, the reasoning and dual holdings of *Llamas* demonstrate that a spouse can be convicted of robbery for a temporary taking of community property, regardless of the property's status.

*Llamas'* second holding rests on three premises: (1) the *mens rea* requirement of section 10851 can be satisfied merely by the intent to temporarily deprive the owner of title to or possession of the property; (2) such an intent, when applied to one spouse's taking of a community property vehicle, does not exceed that spouse's right to the vehicle, and thus is not a taking of "a vehicle not his or her own" (§ 10851, subd. (a)); and (3) for social policy reasons, such a taking "is properly viewed as a domestic and not a criminal" incident (*Llamas, supra,* 51 Cal.App.4th at p. 1739).

None of these premises apply to robbery. "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) At base, robbery is a theft coupled with the use of force or fear to obtain the property – theft being defined in relevant part by section 484, subdivision (a) as a "felonious" taking of "the personal property of another." (See *People v. Tufunga* (1999) 21 Cal.4th 935, 946–948 [use of "felonious taking" language in § 211 incorporated requirements of theft that robber intend to take property belonging to someone else].)

Although the intent for theft (and hence, for robbery) has at times, as in *Llamas* itself, been described as the intent to permanently deprive, that is not an accurate description of the required *mens rea*. In *People v. Avery* (2002) 27 Cal.4th 49 (*Avery*), decided after *Llamas,* the California Supreme Court held that "the language in section 484, subdivision (a), referring to an intent to 'feloniously

13

steal,' reasonably construed, adopted the common law intent requirement. That requirement, although often summarized as the intent to deprive another of the property permanently, is satisfied by the intent to deprive temporarily but for an unreasonable time so as to deprive the person of a major portion of its value or enjoyment." (*Id.* at p. 58; see *People v. Bacon* (2010) 50 Cal.4th 1082, 1117.) Indeed, the *Avery* court described such an intent as "'equivalent to the intent to permanently deprive an owner of property.'" (*People v. Avery, supra*, 27 Cal.4th at p. 57.)

Thus, unlike section 10851, which is satisfied by the mere intent to temporarily deprive the owner of title to or possession of the vehicle, robbery requires an intent much more invasive to the owner's rights – the intent to deprive the owner of the property "temporarily but for an unreasonable time so as to deprive the person of a major portion of its value or enjoyment." (*Avery, supra*, 27 Cal.4th at p. 58.) As applied to a spouse's taking of community property, this intent "exceed[s] the defendant's rights to the property and offend[s] the ownership and possessory interest of his or her spouse" in the community property (*Llamas, supra,* 51 Cal.App.4th at p. 1739), because the intent is to unreasonably deprive the other spouse of major attributes of ownership. By analogy to vandalism, just as the "unilateral nonconsensual damage [of a community asset] by the other marital partner'" violates the other spouse's equal ownership interest (*id.* at p. 1739, quoting *Kahanic, supra*, 196 Cal.App.3d at p. 466), so too does the taking of a community asset with the intent to temporarily, but for an unreasonable period, deprive the other spouse of a major portion of the value or enjoyment of the asset. Thus, based on the *mens rea* required for robbery on a temporary taking theory, the reasoning of *Llamas* compels the conclusion that, in such a case, the taking spouse has taken property not his or her own, and can be convicted of robbery.

14

Indeed, that result is also compelled by the first holding of *Llamas* – that a spouse can be convicted of a theft of community property. It is true that in reaching this holding, the court in *Llamas* did not consider the possibility of theft on a temporary taking theory, and appeared to be under the misimpression that theft required an intent to permanently deprive the owner of the property. However, as we have noted, the California Supreme Court has since held that "the intent to deprive temporarily but for an unreasonable time so as to deprive the person of a major portion of [the property's] value or enjoyment" (*Avery, supra,* 27 Cal.4th at p. 58) is "'equivalent to the intent to permanently deprive an owner of property'" (*id.* at p. 57). That being so, viewed in light of *Avery*, *Llamas'* first holding (that a spouse can be convicted of theft) necessarily means that a spouse can be convicted of robbery for a temporary taking of community property, so long as the *mens rea* requirement is proven.

Finally, as we have noted, *Llamas'* second holding rested in part on the social policy judgment that a temporary taking of a community property vehicle should be treated as a "domestic and not a criminal" matter. (51 Cal.App.4th at p. 1739.) Whatever the merits of that judgment in a prosecution under section 10851, it does not apply to a robbery prosecution. Suffice it to say that we can envision no social policy suggesting that the taking of a community asset by one spouse from the possession of the other spouse using force or fear, with the intent, at the very least, to temporarily but unreasonably deprive the victim spouse of a major portion of the property's value or enjoyment, ought to be deemed only a "domestic and not a criminal" matter. Nor does any social policy suggest that such an incident should be viewed as only an incident of criminal domestic violence and not also of robbery.

15

Our conclusion that a spouse can be convicted of robbery for the forcible taking of community property from the other spouse on a temporary taking theory largely disposes of defendant's contention that the evidence was insufficient to support his robbery conviction. The evidence showed that defendant took the white phone to prevent Avila from calling the police in the midst of his violent assault on her. That evidence was certainly sufficient to prove that the defendant took the phone with the intent to deprive Avila of it temporarily, but for an unreasonable period of time so as to deprive her of a major portion of its value or enjoyment. As the prosecutor aptly observed in argument to the jury, calling 911 for help during a violent assault is probably "the most important call you could make," and defendant's taking the phone from Avila under those circumstances undoubtedly deprived her of a major portion of the value or enjoyment of the phone.

Our reasoning also resolves defendant's contention that the trial court should have instructed the jury on principles of separate and community property. Under *Llamas,* the question whether a spouse has exceeded his or her rights to a community asset, and thus taken property not his or her own, depends on the intent with which that spouse does the taking. Because the defendant spouse's intent is determinative, informing the jury of principles of separate and community property is superfluous. If the prosecution proves the *mens rea* element of robbery, it also proves that the defendant spouse took property not his or her own. Assuming the other elements of robbery are met, the defendant is guilty. On the other hand, if the prosecution fails to prove the *mens rea* element of robbery, it has also failed to prove that the defendant took property not his or her own, and the defendant is not guilty. Instructing the jury on separate and community property principles, for the purpose of determining the status of the property, is unnecessary. Whether the

16

property is properly the subject of robbery – that is, whether it is property not owned by the defendant spouse – depends solely on the defendant's intent.

Here, the jury was properly instructed pursuant to CALCRIM No. 1600 that the requisite intent for robbery existed if the defendant intended "to deprive the owner of [the property] permanently or to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property." Having convicted defendant of robbery under that instruction, the jury necessarily found beyond a reasonable doubt that defendant took property not his own, because that finding is implicit in the finding of the required *mens rea*. Instructions on separate and community property principles were not appropriate.[6]

## DISPOSITION

The judgment is affirmed.

**CERTIFIED FOR PUBLICATION**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

COLLINS, J.

---

[6] We note that even if instructions on separate and community property might have been appropriate (they were not), they would have been pinpoint instructions, because they would have sought to apply separate and community property principles to negate an element of robbery (i.e., the element that the property defendant took was not his own.) Thus, the court would have had no duty to give such instructions absent a request, and no such request was made. (See *People v. Anderson* (2011) 51 Cal.4th 989, 998.)

17