Filed 3/14/22  P. v. Kennemer CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073368 |
| v. | (Super. Ct. No. RIF1602899) |
| MICHAEL JOHN KENNEMER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Godofredo Magno, Judge.  Affirmed.

Levine, Flier and Flier and Leonard B. Levine; Law Office of Kiana Sloan-Hillier and Kiana Sloan-Hillier, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Allison Acosta and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

1

I.

INTRODUCTION

After separating from his wife, defendant and appellant Michael Kennemer filed a quitclaim deed purporting to remove her ownership interest in their house and transferring the title to his name. Defendant later entered the home while his wife was not there and stole her personal belongings. A jury convicted him of willfully and knowingly offering a false and a forged instrument (Pen. Code[1], § 115; count 1), theft of personal property with a value of more than $950 (§ 487, subd. (a); count 2), and residential burglary (§ 459; count 3), and found true the allegation that he stole property with a value of more than $200,000 (§ 12022.6, subd. (a)(2)). The trial court sentenced defendant to formal probation for a term of five years, including a jail term for 270 days.

On appeal, defendant argues (1) the trial court erroneously denied his motion for a new trial; (2) the trial court erroneously instructed the jury as to count 1; (3) the prosecutor committed misconduct; (4) cumulative error requires reversal of his convictions; and (5) substantial evidence does not support the jury's true finding on the property enhancement or his convictions on counts 2 and 3. We reject defendant's contentions and affirm the judgment.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

2

## II.

## FACTS

Defendant and his wife, B.K., rented a house together in Moreno Valley. They decided to buy the house, but because defendant had poor credit, they legally separated in September 2010 so that B.K. could buy it under her name alone. As part of their agreement, defendant and B.K. agreed to grant each other power of attorney. Shortly afterward, B.K. executed and recorded a document that authorized defendant to act as her attorney in fact.

B.K. then bought the house as her separate property. In May 2011, defendant executed an Interspousal Transfer Grant Deed, which waived his rights to the house and confirmed that it was B.K.'s sole property.

In 2012, defendant and B.K. began to have marital problems. According to B.K., defendant "didn't really work" and only did some "construction work." While they were living together but before they bought the house, defendant "worked for three weeks and then injured himself at work" and received worker's compensation benefits. After that, defendant did some work "under the table where he was getting paid cash every so often, nothing steady." B.K. claimed defendant had only a "[m]inimal amount" of income from employers who issued him a paycheck.

In July 2014, B.K. signed and notarized a document revoking defendant's power of attorney she had granted him. B.K. did not record the revocation and did not tell defendant about it.

3

December 2015, however, B.K. told defendant during a fight at their home that she was revoking the power of attorney. Defendant left the house and went to Las Vegas. On December 12, B.K. told defendant over the phone that she wanted a divorce.

In the ensuing days, B.K. saw defendant in Riverside. He told B.K. he was going to the house. B.K. was scared so she called the police. When the officer arrived, defendant spoke with him and agreed to finish packing his belongings by December 20. Defendant loaded his truck on December 18 and told B.K. he would finish packing tomorrow. Defendant left and did not come back the next day.

On December 20, B.K. went to visit her daughter in another state. B.K.'s other daughter, C.H., stayed at B.K.'s house while she was gone.

C.H. went out on December 23 and saw defendant's trailer in the driveway when she returned. C.H. could not open the gate with her key and noticed paint was chipped off a door lock, an alarm fob was missing, and there were footprints inside that were not there when she left earlier. A few hours later, defendant showed up at the house and C.H. let him in, but she left because she felt unsafe.

The next day, B.K. learned from a coworker at the Riverside County Recorder's Office that defendant filed a quitclaim deed purporting to transfer the house to himself. Because she was still out of town, B.K. asked C.H. to remove some of B.K.'s belongings from the house. When C.H. went to the house on December 25, she discovered several of B.K.'s belongings were not there.

4

Defendant came to the house and began moving things into his truck. C.H. left out of fear for her safety, but returned later and found defendant was still moving things into his truck. Defendant told C.H. she could not go inside, so she called the police. Defendant came back to the house the next day and finished packing. B.K. filed for divorce a few days later.

In February 2016, B.K. left for work around 6:30 a.m. About an hour later, her house's security alarm was triggered and then disarmed. B.K. received a text message that her security alarm had low battery. Some of the cameras inside were offline. When B.K. returned that evening, she noticed several items were out of place and the electricity that powered the security system and cameras was cut off. B.K. also noticed that several of her personal items were gone, including Louis Vuitton handbags and a wallet, a camera, and Apple devices. When she used the "find" feature for her Apple products, she received a notification that they were near defendant's Las Vegas home.

A neighbor told B.K. that he saw defendant in B.K.'s driveway around 7:00 or 8:00 a.m. that morning. A secondhand store owner in Long Beach later told investigating officers that she recognized defendant. She claimed defendant tried to sell expensive Louis Vuitton items and jewelry, which she thought was suspicious because he did not care about the price even though they were expensive items.

When an investigator spoke with defendant, he admitted that he recorded the quitclaim deed after signing for B.K. as her attorney in fact. } He also admitted that he

5

entered B.K.'s house in December 2015 to remove items and that he refused to let C.H. inside because he believed she was stealing items.[2]

III.

DISCUSSION

A. *Motion for a New Trial*

Defendant contends the trial court erred by denying his motion for a new trial based on the prosecutor's *Brady*[3] violation and ineffective assistance of counsel. We disagree.

1. *Background*

After the jury convicted him, defendant moved for a new trial on two grounds.[4]

First, he argued the prosecutor violated *Brady* by failing to produce a letter B.K. wrote mid-trial to the prosecutor until after the trial. Defendant argued the prosecutor should have disclosed B.K.'s letter because it impeached her testimony that defendant "didn't really work" and her allegedly uncertain response when asked what work he did

---

[2] Defendant requests that we take judicial notice of five documents related to the Moreno Valley property and his divorce proceedings. We deny defendant's request as unnecessary to resolve the issues on appeal.

[3] *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

[4] Defendant also moved for a new trial based on alleged instruction error, which he raises as a separate argument on appeal. We address the issue below.

6

("Construction, I think").[5] Defendant thus argued B.K.'s letter would have undermined her credibility, which was central to the prosecution's case.

In the letter, B.K. provided the timeframe for when defendant lived with her at the Moreno Valley house. She stated that in 2009 defendant worked for three weeks before he was injured on the job and that he was still receiving worker's compensation for the injury.

B.K. also outlined defendant's subsequent work history: "[Defendant] had a California Contractor's State License #624488, using his business name, iEnergy Worldwide. He contracted a construction job between March 2012-April 2012 for Joan Earhart[, who] filed a complaint against [his] Contractor's license and his license was revoked in 2015. [Defendant] contracted another construction job, between January 2013-May 2013 at his mother's house . . . . In 2013 [defendant] contracted a construction job for . . . his aunt and uncle . . . from May 2013-July 2013 . . . . [Defendant] contracted another construction job for [his aunt and uncle] . . . between March 2015-August 2015. [Defendant] worked on several other construction job sites during these years and prior years. I believe he is currently working at his mother's address doing construction on her house." B.K. noted that defendant has a real estate license and had worked for Patriot Energy HVAC, although she did not specify when.

---

[5] On appeal, defendant also argues that the letter buttressed B.K.'s sister's testimony that B.K. thought defendant was "'loaded.'" He did not make that argument in his motion for a new trial, so it is forfeited. (See *People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)

7

The second basis for defendant's new trial motion was that his trial counsel was ineffective for four reasons.[6]  First, counsel erroneously but successfully moved in limine to exclude "evidence and argument regarding legality of power of attorney in this case," including "whether oral revocation is sufficient to nullify power of attorney" and "whether the power of attorney required [defendant] to act in [B.K.'s] benefit" (i.e., fiduciary duty).  Second, counsel failed to obtain his bank records that showed he contributed financially throughout his marriage with B.K. and thus undermined her testimony that he contributed minimally.  Third, counsel did not obtain receipts that would have showed he was Las Vegas on the day he was allegedly seen trying to sell items at a secondhand store.  Finally, counsel did not obtain documents showing that defendant was a named insured on the Moreno Valley house's homeowner's insurance policy.

The trial court denied defendant's motion.  As to the prosecution's alleged *Brady* violation, the trial court ruled that the prosecution should have produced B.K.'s letter, which favored the defense, but its failure to do so was immaterial.  As to defense counsel's alleged ineffective assistance, the trial court found defendant's counsel was not ineffective because counsel could have made a reasonable tactical decision not to

---

[6] On appeal, defendant does not mention his arguments that counsel was ineffective for failing to impeach an investigator's testimony or that counsel failed to know the law, so we do not discuss them.  (See *Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296 fn. 7 ["Issues not raised in the appellant's opening brief are deemed waived or abandoned"].)

8

subpoena defendant's bank records "or not to go deeper into the records," even though doing so could have impeached B.K.

### 2. Brady *Violation*

In *Brady*, the United States Supreme Court established that due process requires the prosecution to disclose evidence that is both favorable to the defendant and material on either guilt or punishment. (*Brady*, *supra*, 373 U.S. at p. 87.) A *Brady* violation occurs when three conditions are met: (1) the evidence was "'favorable'" to the defendant, (2) the evidence was "'''suppressed by the State, either willfully or inadvertently,'''" and (3) the evidence was "material" (i.e., its suppression was prejudicial). We independently review whether a *Brady* violation has occurred while giving great weight to the trial court's factual findings if supported by substantial evidence. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 176.)

The only issue here is whether the trial court properly found that B.K.'s letter was immaterial. Defendant contends B.K.'s letter was material because it conflicted with her trial testimony about defendant's work history and thus it would have impeached her credibility.

We disagree. Evidence is material under *Brady* if there is "'a reasonable probability its disclosure would have altered the trial result.'" (*People v. Whalen* (2013) 56 Cal.4th 1, 64.) It is not reasonably probable that defendant would have received a better result had the prosecution given defendant B.K.'s letter before the trial concluded.

At trial, B.K. explained that defendant worked for three months before they bought their house but he got injured on the job and received worker's compensation benefits. Although B.K. testified that defendant "didn't really work" while they were married, she also testified that defendant worked "under the table" construction jobs from time to time that paid him in cash, but only received a "[m]inimal amount" of income from jobs where he earned a paycheck.

In the letter, B.K. stated: (1) defendant worked for three weeks in 2009 before receiving worker's compensation benefits; (2) he worked on a handful of months-long jobs, mostly for family members; and (3) he worked for an HVAC company at some point. Although B.K. mentioned that defendant had a real estate license, she did not say that he had earned money from real estate work. B.K.'s letter was therefore consistent with her testimony that defendant worked inconsistently while they were married and only some of his income was from formal jobs.

Because B.K.'s letter did not conflict with her trial testimony, it is not reasonably probable that defendant would have obtained a better result had the prosecution disclosed it to the defense before trial. The trial court therefore did not err in finding B.K.'s letter immaterial and denying defendant's motion for a new trial on *Brady* grounds.

3. *Ineffective Assistance of Counsel*

To establish ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show

10

resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

On direct appeal, ineffective assistance is established "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai*, *supra*, 57 Cal.4th at p. 1009.) "[R]arely will an appellate record establish ineffective assistance of counsel." (*People v. Thompson* (2010) 49 Cal.4th 79, 122.) So "[w]hen the record on direct appeal sheds no light on why counsel failed to act in the manner challenged [the defendant asserts counsel should have acted], defendant must show that there was ""no conceivable tactical purpose"" for counsel's act or omission. [Citations.]"" (*People v. Centeno* (2014) 60 Cal.4th 659, 675.) If the record sheds no light on counsel's actions, the claim must be rejected unless no satisfactory explanation exists or counsel was asked for an explanation and failed to provide one. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)

Defendant's first claim of ineffective assistance of counsel is that his counsel moved to exclude "evidence and argument regarding legality of power of attorney in this case," including "whether oral revocation is sufficient to nullify power of attorney" and "whether the power of attorney required [defendant] to act in [B.K.'s] benefit" (i.e.,

11

fiduciary duty). At the hearing on the motion, trial counsel explained that she was concerned about "a mini trial involving civil and family law issues," particularly whether defendant violated any fiduciary duty to B.K. Counsel thought arguments about those issues would confuse the jurors and lead them to make legal conclusions they could not make as laypeople. Counsel also believed arguments and evidence about the fiduciary duty defendant owed to B.K. were unnecessary because "[t]he issue boils down" to whether defendant's filing the quitclaim deed was fraudulent, not whether it violated his fiduciary duty to B.K.

Counsel's discussion with the trial court about the motion in limine shows that the motion was a reasonable tactical decision. Counsel reasonably concluded that evidence and argument about the fiduciary duty defendant owed B.K. under the power of attorney and whether he breached that duty was beyond the jury's capabilities, may have confused the issues, and may have required a "mini trial" on issues that counsel reasonably found were unnecessary for the jury to decide. Because counsel's motion in limine was a reasonable tactical decision, we reject defendant's claim that it amounts to ineffective assistance of counsel.

Defendant next contends his trial counsel was ineffective for failing to obtain his bank records, which would have bolstered his credibility. In particular, he argues the records would have undermined B.K.'s testimony that he contributed "very minimally" to the marriage while supporting his testimony that he contributed financially to the marriage. He argues that his credibility was damaged when he testified during cross-

12

examination by the prosecutor that he did not have bank records to support his testimony that he consistently contributed to his marriage financially.

Defendant's trial counsel may have made a tactical decision not to obtain and introduce defendant's bank records at trial. Counsel could have reasonably concluded that although the records show that defendant contributed financially to the marriage, they might not have sufficiently undermined B.K.'s testimony that he did not contribute much. Counsel may have reasonably found that the records would not show whether defendant's contributions were significant compared to B.K.'s. Counsel similarly may have found that defendant's bank records were inconclusive as to whether he contributed as much as he claimed he did, and thus could have hurt his credibility. Counsel also may have reasonably concluded that attacking B.K.'s credibility in other ways, such as focusing on her sister's testimony that B.K. was greedy and determined to keep the house for herself, was more effective than parsing through bank records.

Because counsel may have had a tactical decision not to obtain defendant's bank records, we reject his claim that counsel was ineffective for failing to subpoena them and produce them at trial.

Defendant also argues his counsel was ineffective for failing to obtain several receipts which showed that he paid bills in Las Vegas on the day the secondhand store owner claimed to have seen him and in the days before and after. But defendant concedes that the bills did not establish his "exact whereabouts." Counsel thus may have reasonably concluded that the receipts did not help defendant's defense because they did

13

not show where he was, and thus did not undermine the secondhand store's owner's testimony. This potential tactical decision does not constitute ineffective assistance of counsel.

Defendant's final claim of ineffective assistance of counsel is that his counsel failed to obtain documents showing that he was a named insured on B.K.'s house's insurance policy. In his view, this would have refuted B.K.'s testimony that defendant knew she was the house's sole owner. Although defendant may have been a named insured, the fraudulent-filing charge (count 1) was based on his lack of authorization from B.K. to record the quitclaim deed transferring title to him. Counsel could have reasonably decided that insurance documents showing that defendant was a named insured would not have contributed to his defense that he properly recorded the deed.

For all of these reasons, we reject defendant's ineffective assistance of counsel claim. The trial court did not err in denying defendant's motion for a new trial based on his counsel's alleged ineffective assistance.

B. *Instructional Error*

Defendant contends the trial court erred by failing to instruct the jury that (1) the "transfer of the deed into his name did not change the nature of the [Moreno Valley house]" and that (2) the jury could not find true the allegation defendant took property worth $200,000 or find him guilty on counts 2 or 3 if the jury could not determine who owned the house or the allegedly stolen items or if the jury found that the property was community property.

14

When discussing the issue at the hearing on defendant's motion for a new trial, the trial court told counsel that it believed it did not have to give the instructions sua sponte and that defense counsel had to request them. Counsel responded that he "[a]bsolutely agree[d]" with the trial court, as do we. Because defendant did not request the instructions he claims the trial court should have given, the trial court properly denied defendant's motion for a new trial for instructional error. (See *People v. Aguilera* (2016) 244 Cal.App.4th 489, 502 fn. 6 [trial court had no sua sponte duty to give instructions seeking "to apply separate and community property principles to negate an element of robbery"].) Defendant likewise forfeited the issue for our review. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1246 ["The trial court was under no sua sponte duty to give an instruction as to the limited purpose for which evidence was received. [Citation.] Vo's failure to request such an instruction forfeits the claim of error on appeal."], abrogated on other grounds by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)

C. *Prosecutorial Misconduct*

Defendant argues the prosecutor advanced two legally "defective" theories of fraud. Defendant never objected, so he forfeited his claim of prosecutorial misconduct. (*People v. Hajek and Vo*, *supra*, 58 Cal.4th at p. 1239 ["Vo's trial counsel failed to object to a single remark he now assigns as misconduct by the prosecutor, thus forfeiting his claims of misconduct."].)

D. *Cumulative Error*

Defendant contends the judgment must be reversed because of cumulative error. But because we have found no error, the cumulative error doctrine does not apply. (*People v. Duff* (2014) 58 Cal.4th 527, 562 [no cumulative error when there is "nothing to cumulate"].)

E. *Enhancement Allegation*

Defendant argues that the jury's true finding on the former section 12022.6, subdivision (a)(2)[7] enhancement on count 1 is not supported by substantial evidence because B.K. suffered no financial loss when he recorded the quitclaim deed. We disagree.

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither

---

[7] Former section 12022.6, which was in effect at the time of defendant's offenses, was repealed in 2018 and was not reenacted. (See *People v. Medeiros* (2020) 46 Cal.App.5th 1142, 1147.)

16

reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

Former section 12022.6 provided that the trial court must impose another two-year term if the defendant "takes, damages, or destroys any property in the commission or attempted commission of a felony, with the intent to cause that taking, damage, or destruction," and the loss exceeds $200,000. The People alleged that defendant's recording the quitclaim deed to transfer title of B.K.'s house to him caused B.K. to suffer loss exceeding $200,000 because the house was worth more than $200,000 at the time. Substantial evidence supports the jury's true finding on the section 12022.6, subdivision (a)(2) allegation.

The People presented testimony from a real estate fraud investigator that B.K.'s house was worth about $370,000 when he recorded the quitclaim deed. B.K. bought the house as her sole and separate property. Defendant's fraudulently filing the quitclaim deed is a felony. (§ 115, subd. (a).) When he filed the deed and transferred title to the house to his name, B.K. was divested of any interest in the property. (See *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 503 ["Under well-settled law, a quitclaim deed passes all the right, title and interest the grantor has in the property at the time of its execution."].)[8] The jury thus reasonably found that defendant took more than $200,000

---

[8] Defendant argues his filing of the quitclaim deed had no legal effect. He provides no authority to support his argument beyond the unsupported opinion of a legal expert he retained for his motion for a new trial. (*Estate of Teed* (1952) 112 Cal.App.2d 638, 646 ["The *ipse dixit* of the most profound expert proves nothing except it finds support upon some adequate foundation."].)

in real property from B.K. in the commission of a felony.  Substantial evidence supports the jury's true finding on the section 12022.6, subdivision (a)(2) enhancement allegation. (See *People v. Abrahamian* (2020) 45 Cal.App.5th 314, 320 [upholding true finding on section 12022.6, subdivision (a)(2) enhancement for the defendant's fraudulently filing quitclaim deed conveying property to himself].)

F.  *Counts 2 and 3*

Defendant asserts substantial evidence does not support his convictions on counts 2 (grant theft) and 3 (residential burglary).  We disagree.

Grand theft in violation of section 487, subdivision (a) occurs "[w]hen the money, labor, or real or personal property taken is of a value exceeding nine hundred fifty dollars ($950)."  Burglary in violation of section 459 "consists of an act—unlawful entry— accompanied by the 'intent to commit grand or petit larceny or any felony.'"  (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041.)

On December 24, 2015, C.H. saw defendant at B.K.'s house moving his belongings.  The next day, C.H. again saw defendant at the house moving his belongings. When C.H. entered the house later that evening, she noticed several of B.K.'s belongings were missing.  B.K. estimated the missing items were worth about $12,000.  From this evidence, the jury could reasonably find that defendant stole personal property worth more than $950 from B.K. in violation of section 487, subdivision (a).  Substantial evidence thus supports defendant's conviction on count 2.

18

On December 23, 2015, C.H. noticed that a fob for the house's security system was missing, defendant's trailer was outside, and there were footprints inside the house that she did not recognize. About two months later, B.K.'s house was burglarized. W.G., B.K.'s neighbor, saw defendant in B.K.'s driveway between 7:00 and 8:00 a.m. on the morning of the burglary. The security system had been deactivated around 7:20 a.m., and could have been deactivated by the missing fob. When B.K. returned that evening, she noticed several items were missing, including a Louis Vuitton bag. The secondhand store owner identified defendant as a man who tried to sell her a Louis Vuitton bag after the burglary. From this evidence, the jury could reasonably find that defendant burglarized B.K.'s house. Substantial evidence thus supports defendant's conviction on count 3.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

FIELDS
J.

19