Filed 3/7/23  P. v. Khemphomma CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079149 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. INF1700929) |
| THONGLINH KHEMPHOMMA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Anthony R. Villalobos, Judge.  Reversed and remanded with directions.

Ronda G. Norris, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Robin Urbanski, Paige B. Hazard and Juliet W. Park, Deputy Attorneys General for Plaintiff and Respondent.

The People charged Thonglinh Khemphomma with second degree murder (Pen. Code,[1] § 187, subd. (a); count 1), gross vehicular manslaughter

---

[1]    Undesignated statutory references are to the Penal Code.

(§ 191.5, subd. (a); count 2), driving under the influence of alcohol and causing death and bodily injury (Veh. Code, § 23153, subd. (a); count 3), and felony driving with a 0.08 percent or more blood alcohol content causing injury (Veh. Code, § 23153, subd. (b); count 4). The People alleged as to counts 3 and 4 that Khemphomma personally inflicted great bodily injury upon the victim, who was not an accomplice. (§§ 12022.7, subd. (a), 1192.7, subd. (c)(8).)

Following the People's case-in-chief, the court granted the prosecutor's motion to dismiss the gross vehicular manslaughter count. The jury convicted Khemphomma on the remaining counts and found all enhancements true. The court sentenced Khemphomma to 15 years to life in state prison on count 1, and imposed but stayed the sentence on the other counts and enhancements under section 654.

Khemphomma contends: (1) insufficient evidence showed he acted with implied malice to support his second degree murder conviction; (2) the court prejudicially granted the prosecution's motion to dismiss the gross vehicular manslaughter count; and (3) he is entitled to resentencing under Senate Bill No. 567, and Assembly Bill Nos. 124, and 518; moreover, the abstract of judgment should be corrected to accurately reflect his convictions. We conclude the court erroneously dismissed count 2, and therefore reverse the judgment and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2017, Khemphomma drove under the influence of alcohol from Arizona to California with his mother, Sim Khemphomma, as his passenger. He crashed his car into the freeway's center median, killing his mother. The parties stipulated her cause of death was multiple blunt impact injuries from the collision, with no other significant conditions noted.

2

A police officer investigating the collision testified "that the vehicle inappropriately and unsafely turned to the left causing it to leave the roadway. And then as the driver attempted to regain control of the vehicle, the vehicle was trying to turn back to the right to get back to the lane of traffic and lost control and—which led to the vehicle rolling over." He believed the vehicle overturned at least twice. He did not see any evidence to support a mechanical failure as the cause of the accident. Three of the tires appeared deflated, but apparently they did not deflate before the collision.

Khemphomma failed several field sobriety tests administered while he was at the hospital following the incident. Approximately two hours after the crash, a preliminary alcohol screening test showed his blood-alcohol concentration was 0.226 percent.

Khemphomma had four prior convictions for driving under the influence, and his license had been revoked twice before. As part of a 2013 case, he was ordered to attend Mothers Against Drunk Driving classes, and he acknowledged on a plea form that he "drove and operated a motor vehicle within the state of Minnesota while under the influence of alcohol. I agree that alcohol significantly causes impairment in my driving ability."

Defense counsel presented no trial evidence.

DISCUSSION

I. *Sufficiency of the Evidence of Second Degree Murder*

Khemphomma contends there was insufficient evidence of implied malice to sustain his second degree murder conviction.

In reviewing the sufficiency of the evidence under the substantial evidence standard, an appellate court does not " ' "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." [Citation.] Instead, the relevant question is whether, after viewing

3

the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Boatman* (2013) 221 Cal.App.4th 1253, 1262, italics omitted.)

"In determining whether evidence is sufficient to support a verdict, we examine the entire record, viewing the evidence in the light most favorable to the judgment and presuming in support of the verdict the existence of every fact the jury could reasonably deduce from the evidence.  The issue is whether the record so viewed discloses evidence that is reasonable, credible and of solid value such that a rational trier of fact could find the elements of the crime beyond a reasonable doubt." (*People v. Llamas* (1997) 51 Cal.App.4th 1729, 1736.)  " 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

Murder is the unlawful killing of a human being . . . with malice aforethought.  (§ 187, subd. (a).)  Malice may be express or implied.  (§ 188, subd. (a).)  Implied malice has " 'both a physical and a mental component. The physical component is satisfied by the performance of "an act, the natural consequences of which are dangerous to life." [Citation.]  The mental component is the requirement that the defendant "knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life." ' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1181; accord, *People v. Watson* (1981) 30 Cal.3d 290, 300.)  The mental component of implied malice is subjective, requiring that the defendant actually appreciate the risk of his or her actions.  (*People v. Murphy* (2022) 80 Cal.App.5th 713, 726; *People v. Superior Court* (*Costa*) (2010) 183 Cal.App.4th 690, 697.)

4

*People v. Watson* is the leading case on vehicular murder on a theory of implied malice. The defendant there consumed large quantities of beer at a bar. Afterwards, he drove through a red light and barely avoided a collision with another car in an intersection. He drove away at high speed and collided with another vehicle, killing two of its occupants. (*People v. Watson*, *supra*, 30 Cal.3d at p. 293.) The trial court dismissed the murder counts, and the California Supreme Court reversed the order. (*Id.* at pp. 294–295.) It explained there was a rational ground to conclude the defendant's conduct constituted second degree murder: he had consumed enough alcohol to be legally intoxicated; he drove to the bar and must have known he would have to drive later; it could be presumed he knew of the hazards of driving while intoxicated; he drove at "highly excessive speeds through city streets, an act presenting a great risk of harm or death"; he only narrowly avoided a collision with another vehicle by skidding to a stop, then resumed his excessive speed; and he tried to brake his car before the fatal collision, suggesting he knew of the great risk of harm he had created. (*Id.* at pp. 300-301.) These facts would "reasonably and readily" support a conclusion the defendant acted with a conscious disregard for human life. (*Id.* at p. 301.)

Since *People v. Watson*, *supra*, 30 Cal.3d 290, several cases have upheld convictions for murder based on drunk driving, relying on some or all of these factors: blood-alcohol level above the legal limit; a pre-drinking intent to drive; knowledge of the hazards of driving while intoxicated; and highly dangerous driving. (*People v. Murphy*, *supra*, 80 Cal.App.5th at p. 727; *People v. Autry* (1995) 37 Cal.App.4th 351, 358.) These factors need not all be present. (*People v. Wolfe* (2018) 20 Cal.App.5th 673, 682-683.)

For instance, in *People v. Olivas* (1985) 172 Cal.App.3d 984, 989, sufficient evidence showed implied malice, as the defendant had consumed

5

enough drugs to impair his faculties, drove at extremely high speeds on city streets for a relatively lengthy period of time, and continued doing so after the dangers were shown by one collision, two near misses, and a police chase, although there was no indication he took the drug knowing he would later drive.

In *People v. McCarnes* (1986) 179 Cal.App.3d 525, 533, the defendant drove at high speeds with a high blood alcohol level, executing two extremely reckless passing maneuvers and embarking on a third in the face of an oncoming vehicle. The appellate court said that the evidence, coupled with four prior convictions for driving under the influence, was "overwhelming[ ]," and any suggestion it did not support a finding of implied malice was "nonsense, if not an affront to this court." (*Ibid.*)

The evidence here similarly supports a finding Khemphomma was subjectively aware of the potentially deadly consequences of his driving. After the collision, his blood alcohol level was near three times the legal limit. As shown in his police interview, he intended to and did drink alcohol before and during the drive from Phoenix to California. He was aware of the dangers of drunk driving from his prior DUI convictions. Finally, the investigating police officer testified Khemphomma was driving in a dangerous manner.

Khemphomma states: "Should this court find sufficient evidence of implied malice, [he] exhausts his remedies in order to request the California Supreme Court grant review to re-examine its decision in *People v. Watson, supra,* 30 Cal.3d 290." However, he acknowledges that we are bound by that decision under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.

6

## II. *Dismissal of Gross Vehicular Manslaughter Count*

Khemphomma contends: "The court failed to recognize it had discretion to deny the prosecutor's last minute request to dismiss Count 2, gross vehicular manslaughter, thereby abusing its discretion under section 1385." He specifies that "the dismissal eliminated [his] defense and the jury's ability to convict him of a less serious offense but still hold him accountable for a death. The court's decision took away [his] ability to present a complete defense as planned, i.e., that he was guilty of gross vehicular manslaughter but not murder." He contends the dismissal deprived him of his federal constitutional rights to due process, to present a complete defense, and to have the jury instructed on his defense.

The People concede the trial court erroneously believed it lacked discretion to deny the prosecutor's request to dismiss the count. Nevertheless, they contend any error was harmless because Khemphomma would not have received a better result if he had been tried on both counts 1 and 2. The People add that count 2's dismissal did not deprive Khemphomma of a constitutional right to present a complete defense to the other charged offenses. They also argue gross vehicular manslaughter is not a lesser included offense of murder; at most it is a lesser related offense and therefore Khemphomma had no constitutional right to compel the court to give a lesser related offense instruction.

### A. *Background*

At the end of the People's case-in-chief, the prosecutor moved to dismiss the gross voluntary manslaughter count, without citing any statutory basis, and without any explanation besides it was "within the People's province" to do so. Defense counsel argued in opposition that his strategy revolved around that count, and it was "prejudicial to the defense to allow the People

7

to dismiss this count after all of the cross-examination of the People's witness[es] is done, and moments before the defense is about to put on the case."

The court stated, "I don't see how I can prevent the [People] from [dismissing the count]." It pointed out that the witnesses were subject to recall. Defense counsel objected: "Even though they are subject to recall, that doesn't change all of the questions that I've already asked that are already part of the record that wouldn't have been the same if count 2 weren't around. But now I'm stuck with all of that evidence, and strategically that leaves me at a severe disadvantage." Defense counsel added, "I wouldn't have delved into certain areas, I would have delved into other areas, etc." Defense counsel continued, "This case involves the death of somebody. The only counts that involve the death of somebody are the life count of murder in count 1 and the vehicular manslaughter . . . [maximum term of ten years on count 2]." [¶] . . . And to remove count 2 as an option for the jury, they are then put in the position despite there being a death, they have to find [Khemphomma] guilty of murder, or not guilty of everything. And I think that severely prejudices the defense this late in the game, especially to no longer have that landing spot of count 2." Defense counsel also stated that Khemphomma's previous counsel had expressed Khemphomma's willingness to plead guilty to count 2 and serve more than the maximum term of ten years in prison.

The court took a recess to conduct research. It stated afterwards: "I really couldn't find anything that would prevent me from dismissing [count 2] at the [People's request]. They do have the burden." The court expressed sympathy for defense counsel's argument: "[I]nitially when you hear [defense's argument], you say, [']well it's to their benefit to have a dismissal[']

8

but then I can see what [defense counsel is saying] about the issues we delve into and so forth. And then now [defense counsel needs] to prepare [his] client for testifying tomorrow."

Defense counsel replied, "Yes, your honor. He was already prepared with a different game plan in mind. . . . I'd like to have that time not just for my client to help prepare him, but I was about to give an opening statement. There's all sorts of strategy choices that are going to need to be recalculated now."

The court continued the trial until the next day. At that time, defense counsel moved for a mistrial, arguing the court had violated Khemphomma's constitutional rights by dismissing the count: "There have been no changes in the case over the last four years. The defense feels it's improper to wait until after the People have rested to suddenly move the goalpost. [¶] There are a myriad of decisions and questions that relied on the charges in this case being the same charges that they have been for four years, and certainly what they were at the start of this trial." The court denied the motion on the ground that "the People do have the option to dismiss [counts]."

B. *Applicable Law*

Section 1385 provides: "The judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal shall be stated orally on the record. The court shall also set forth the reasons in an order entered upon the minutes if requested by either party or in any case in which the proceedings are not being recorded electronically or reported by a court reporter." (§ 1385, subd. (a).)[2]

---

[2]    Since the court's ruling, section 1385, subdivision (c)(2) was amended to require the trial court, in exercising its discretion, to "consider and afford

9

Under sections 1385 and 1386, *courts* have the "sole authority . . . to dismiss actions in furtherance of justice." (*People v. Bonnetta* (2009) 46 Cal.4th 143, 148-149; *People v. Tenorio* (1970) 3 Cal.3d 89, 92-93.) We review the court's ruling under section 1385 for abuse of discretion. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 530.) As the California Supreme Court explained: " ' "[T]he language of [section 1385], 'in furtherance of justice,' requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal. [Citations.]" [Citations.] At the very least, the reason for dismissal must be "that which would motivate a reasonable judge." [Citations.]' [Citation.] 'Courts have recognized that society, represented by the People, has a legitimate interest in "the fair prosecution of crimes properly alleged." (*Romero*, at pp. 530-531.) "But 'the interests of society represented by the People' do not begin or end with the mechanical prosecution of charges properly alleged. 'The public prosecutor " 'is the representative not of any ordinary party to a controversy,

---

great weight to evidence offered by the defendant to prove that [certain specified mitigating circumstances] are present." The enumerated mitigating circumstances are: (A) the enhancement would result in a discriminatory racial impact; (B) multiple enhancements are alleged in a single case; (C) the application of an enhancement could result in a sentence of over 20 years; (D) the current offense is connected to mental illness; (E) the current offense is connected to prior victimization or childhood trauma; (F) the current offense is not a violent felony; (G) the defendant was a juvenile when they committed the current offense or any prior offenses that trigger the enhancement or enhancements applied in the current case; (H) the enhancement is based on a prior conviction that is over five years old; and (I) though a firearm was used in the current offense, it was inoperable or unloaded. (§ 1385, subd. (c)(2).) This provision applies here: " 'If the judgment is not yet final because it is on appeal, the appellate court has a duty to apply the law as it exists when the appellate court renders its decision.' " (*People v. Fuentes* (2016) 1 Cal.5th 218, 231.)

10

but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.' " ' " (*Nazir v. Superior Ct.* (2022) 79 Cal.App.5th 478, 493.) "[A] prosecutor's motion to dismiss . . . under section 1385 is not 'a constitutionally protected exercise of prosecutorial discretion,' and the trial court may deny such a motion. . . . [O]nce a district attorney files charges and invokes the court's jurisdiction, only the court, not the district attorney, can dismiss an action or enhancement under section 1385." (*Id.* at pp. 499–500.) "A court acting while unaware of the scope of its discretion is understood to have abused it." (*People v. Tirado* (2022) 12 Cal.5th 688, 694.)

C. *Analysis*

Khemphomma contends: "The court's failure to understand it had discretion to deny the prosecutor's last minute request, and failure to exercise any discretion, denied [him] his due process right to a fair trial and to present a complete defense to the charges against him." We agree with the People that gross vehicular manslaughter is not a lesser included offense of murder, but a lesser related offense. Once the count was dismissed, the court was not required to instruct regarding gross vehicular manslaughter. (*People v. Sanchez* (2001) 24 Cal.4th 983, 988, 991-993, overruled on another ground in *People v. Reed* (2006) 38 Cal.4th 1224, 1228-1229; *People v. Foster* (2010) 50 Cal.4th 1301, 1344 [" '[T]here is no federal constitutional right of a defendant to compel the giving of lesser-related-offense instructions' "])

Even though we find no constitutional violation from the dismissal of the gross vehicular manslaughter count, we find it difficult to conceive how a dismissal induced by a prosecutor's misstatement of the law to the court can be characterized as being in the interest of justice.

11

The People argue that any error was harmless under either the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, mandating reversal only if it is reasonably probable the jury would have returned a different verdict absent the errors complained of (*People v. Rogers* (2006) 39 Cal.4th 826, 867-868 [applying this standard to the erroneous failure to instruct on a lesser included offense]), or the stricter beyond a reasonable doubt standard set forth in *Chapman v. California* (1967) 386 U.S. 18. We disagree.

We find merit in Khemphomma's contention that "If the jury had any doubts, particularly concerning the implied malice element but believed Khemphomma was responsible for his mother's death, it could have convicted him of gross vehicular manslaughter and acquitted him of murder." Under the particular facts of this case, "[g]iven the evidence before the jury, there is ' " 'more than an abstract possibility' " ' [citation] that at least one juror" (*People v. Hendrix* (2022) 13 Cal.5th 933, 947) would have found Khemphomma not guilty of second degree murder. It is likely the prosecutor shared this concern, or she would not have moved to dismiss the count. Moreover, in filing the gross vehicular manslaughter count in the first instance, the People believed that such a possible resolution of the case should be within the purview of the jury. Presented with counts of both second degree murder and gross vehicular manslaughter, a reasonable juror could conclude Khemphomma would not do anything to intentionally harm his mother and, therefore he lacked the implied malice to commit second degree murder.

### III. *Sentencing Issues*

Khemphomma contends and the People concede he is entitled to resentencing under Senate Bill No. 567 and Assembly Bill Nos. 124, and 518.

12

In light of our reversal of the count 1 conviction, we need not address this issue.

The People correctly point out that the abstract of judgment erroneously states that Khemphomma was convicted of first degree murder. The court is directed to correct this error to show he was in fact convicted of second degree murder.

## DISPOSITION

The judgment is reversed. The matter is remanded for proceedings consistent with this opinion.

O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


DO, J.

13